UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TANGIBLE VALUE, LLC

      Plaintiff,                              Civil Action No. 10-1453 (JAP)

          v.                                  **OPINION**

TOWN SPORTS INTERNATIONAL
HOLDINGS, INC., et al.,

      Defendants.

PISANO, District Judge.

       This action arises out of a project to develop a computer system for the management of fitness clubs. Plaintiff Tangible Value LLC ("TV") alleges that it provided software development services as part of this project to Defendants Town Sports International Holdings, Inc. ("Holdings") and Town Sports International LLC ("International," together with Holdings, "Town Sports") for which TV was not paid. TV brings this action against Town Sports and Radcliff Group, LLC ("Radcliff") alleging breach of contract, promissory estoppel, unjust enrichment, and fraud. Presently before the Court are motions by Defendants to dismiss the First Amended Complaint (the "Complaint"). For the reasons below, Town Sports' motion to dismiss pursuant to Federal Rule of 12(b)(6) is granted as to Counts V and

VI and denied in all other respects. Radcliff's motion to dismiss for lack of personal jurisdiction is granted.

## I.  BACKGROUND

The following is a summary of the allegations in the Complaint, which the Court must accept as true when addressing a motion under Rule 12(b)(6):

Defendant Holdings is an operator of fitness clubs in the United States and abroad. Defendant International is one of its subsidiaries. In March of 2008, Holdings and International (collectively referred to herein as "Town Sports") entered into a Master Services Agreement ("MSA") with non-party Ajilon Solutions ("Ajilon") for the development of a new enterprise management system or Global Management System ("GMS"). Ajilon then hired non-party Orion Ventures, Inc. ("Orion") who in turn entered into an oral subcontract with TV by which TV would provide software developers for the GMS project.

In 2009, having become dissatisfied with Ajilon's performance, Town Sports halted the project. As a result, Ajilon instructed TV to stop working on the project. However, Town Sports "requested that TV 'keep working' … with a promise to the effect that 'we will get you paid as you did through Ajilon.'" Complaint ¶ 40. TV alleges that Town Sports, in part through Defendant Radcliff (who acted as an agent of Town Sports at all relevant times) solicited TV to work directly for Town Sports on the completion of the GMS project as well as other software development projects. It is alleged that an agreement was reached "both verbally and by informal writings," Complaint ¶ 43, under which Town Sport would (1) pay TV a $50,000 per month maintenance fee; (2) pay TV's outstanding invoices due from Ajilon for work performed prior to the termination of the project in the amount of $200,000; (3) pay TV $2.5 million for services for the period October 1, 2009 through January 1, 2010; (4)

extend to TV advances on the $2.5 million for payment of expenses; (5) hire TV for future services valued at over $2.5 million after January 1, 2010; (6) indemnify TV for claims made by Ajilon resulting from TV's direct dealings with Town Sports.  As a result of the parties' agreement, TV provided services to Town Sports and incurred approximately $622,000 in expenses to meet the requirements of the agreement.

Plaintiff attempted to memorialize the parties agreement through counsel, but Town Sports refused to memorialize in the written document certain of the terms that had been agreed upon.  In October 2009, TV presented invoices to Town Sports for the services provided by TV.  Town Sports denied any monies were due and owing.

## II.  ANALYSIS

There are two motions before the Court.  Defendant Radcliff moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Rule 9(b) for failure to plead fraud claims with the requisite specificity and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Town Sports similarly moves to dismiss the Complaint under Rule 12(b)(6) as well as under Rule 9(b).

<u>Rule 12(b)(6) Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted). More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 2009 WL 2501662, *5 (3d Cir. August 18, 2009) (citations omitted).

   Importantly, a motion to dismiss a complaint for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint liberally and accept as true all well-pleaded allegations in the complaint and view them in the

light most favorable to the plaintiff.  *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1537-38 (3d Cir. 1993).

Town Sports's and Radcliff's 12(b)(6) Motion

The Complaint contains six counts against Town Sports:  breach of contract, promissory estoppel, unjust enrichment, intentional misrepresentation, legal fraud and equitable fraud.  All claims are asserted against Town Sports, and only the three fraud claims are asserted against Radcliff.

Turning first to the breach of contract claim, Town Sports argues that the alleged oral contract is unenforceable under the Uniform Commercial Code's statute of frauds.  *See* N.J.S.A. § 12A:2-201(1).[1]  Town Sports contends that the oral contract is one for the sale of goods (*i.e.*, software) in excess of $500, and therefore, it is not enforceable under the statute.  Plaintiff, on the other hand, argues that the contract is one for software development services, not "goods," or, at least, is one that is predominately for services, and therefore the UCC does not apply.  Indeed, courts have noted that "a contract for the *development* of a software system is not identical to a contract for the *sale* of a software system.  *KSM Associates, Inc. v. ACS State Healthcare*, LLC  2006 WL 847786, *5 (E.D. Pa. 2006) (emphasis in original) (citing *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F.Supp.2d 326, 353 (D. Me. 2003) (distinguishing between creation of software from scratch and sale of preexisting software and holding that UCC does not apply to former).

---

[1] The parties dispute whether New York or New Jersey law applies in this case.  Because neither party contends there exists an actual conflict between these states' laws on this point, the Court applies the law of the forum state.  *See Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006) (Under New Jersey's approach to choice-of-law questions, if there is not an actual conflict a federal court sitting in diversity jurisdiction is to apply New Jersey law.).

The Court finds that Defendants' argument fails.  An affirmative defense such as the statute of frauds may be raised on a motion to dismiss under 12(b)(6) only if the defense appears on the face of the complaint.  *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).  This is simply not the case here.  As pled in the Complaint, under the alleged contract TV was to "work directly for Defendants Town Sports on the completion of [GMS] and on other software development projects."  Compl. ¶ 41.  It is impossible for the Court to discern merely from the face of the Complaint whether the contract is one for goods or on one for services or whether, if mixed, which predominates.  Defendants' statute of frauds argument, properly supported, would be more appropriately raised in the context of a summary judgment motion.

Defendants' next argument for dismissal of the breach of contract claim similarly fails.  Defendants, pointing to an email that is relied upon by Plaintiff in the Complaint, contend that no enforceable contract was formed because Town Sports did not intend to be bound to a contract with TV until the parties had a signed writing.  Specifically, the email from Mike Radcliff of Radcliff to Ed Soesman of TV attaches a work plan for several information technology projects, indicates that TV would be involved along with several others in "Project 1," and notes that "[o]ur mutual legal beagles are preparing the contract to get project 1 launched ASAP."  Stern Decl. Ex. B.  According to Town Sports, this email evinces Defendants' intent not to be bound to an agreement with TV absent a written agreement.

The email in question is not as conclusive on the question of Defendants' intent as Defendants argue and as would be required to grant a motion under Rule 12(b)(6).  Indeed, under New Jersey law, parties may bind themselves to an informal agreement even though they contemplate the later execution of a formal agreement.  *See Morales v. Santiago*, 217

6

N.J. Super. 496, 502, 526 A.2d 266 (App. Div. 1987); *Comerata v. Chaumont, Inc.*, 52 N.J. Super. 299, 305, 145 A.2d 471, (App. Div. 1956).  While the email does indicate that a contract was being prepared in connection with "Project 1," Town Sports (through its agent, Radcliff) does not express in the email an intent to be bound only upon the execution of the signed writing with TV.  Indeed, far too many inferences must be drawn in favor of Defendants and against Plaintiff from the email for Defendants' argument to succeed, which would be inappropriate on a motion under Rule 12(b)(6).

The instant case is distinguishable from, for example, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F.Supp.2d 831, 834 (D.N.J. 2006), a case relied upon by Town Sports.  At issue in *Fletcher-Harlee Corp.* was a written bid submitted by a subcontractor to a general contractor.  The bid included the following language:  "This is provided for informational purposes and no reliance should be placed thereon.  [Subcontractor] will not be responsible or liable in any manner pending execution of a written agreement covering the work in question.  The submission of this information should not be regarded as a firm offer."  In that case, the court found the subcontractor had clearly manifested an intent not to be bound by the bid, and dismissal of the plaintiff's breach of contract claim on a 12(b)(6) motion was warranted.  The instant case, however, lacks such a clear manifestation of intent on the face of the complaint (or the documents upon which it relies).  Like Defendants' earlier argument, it would have been more appropriate to raise the issue by way of a summary judgment motion rather than motion to dismiss, as the parties then could present and the Court could consider all relevant factual circumstances.

The Court next considers Plaintiff's promissory estoppel claim. The parties dispute whether New York or New Jersey law applies to the claim. The Court need not resolve the choice-of-law question at this stage because under either state's law Defendants' motion fails.

Town Sports argues that Plaintiff's claim must be dismissed pursuant to New York law because Plaintiff has not and cannot plead "unconscionable injury." "A claim for promissory estoppel may not be maintained under New York law where the alternative claim for breach of contract is barred by the Statute of Frauds, unless the circumstances make it unconscionable to deny the promise upon which the plaintiff relied." *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 146 F.Supp.2d 385, 405 (S.D.N.Y. 2001). Here, however, as discussed above, it has not been determined that Plaintiff's breach of contract is barred by the statute of frauds.

Under New Jersey law, which apparently does not have the same unconscionable injury requirement, Town Sports argues that Plaintiff's promissory estoppel claim fails because Plaintiff has not shown reasonable reliance. To state a claim for promissory estoppel in New Jersey, a plaintiff must plead facts must plead facts establishing: " '1) a clear and definite promise; 2) made with the expectation that the promisee will rely upon it; 3) reasonable reliance upon the promise; 4) which results in definite and substantial detriment.' " *Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.*, 490 F.Supp.2d 556, 561 (D.N.J. 2007) (quoting *Lobiondo v. O'Callaghan*, 357 N.J. Super. 488, 815 A.2d 1013, 1020 (App. Div. 2003)). Defendants, relying upon the email discussed above, contend that there can be no reasonable reliance on the part of TV as a matter of law because the alleged promise by Town Sports was conditioned upon the execution of a written agreement. However, as discussed above, the alleged email does not so clearly and unambiguously condition performance upon

8

execution of a written agreement that the Court can reach the conclusion urged by Defendants under the 12(b)(6) standard. Defendants' motion to dismiss TV's promissory estoppel claim is accordingly denied.

Plaintiff's next claim is for unjust enrichment/quantum meruit. Quantum meruit is a form of quasi-contractual recovery and " 'rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.' " *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437, 608 A.2d 280, 285 (1992) (*quoting Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108, 219 A.2d 332, 334 (App. Div.1966)). Town Sports asserts that this claim should be dismissed whether New York or New Jersey law applies because where the statute of frauds bars recovery in a breach of contract action, a plaintiff may not recover damages through an unjust enrichment or quantum meruit theory, citing, for example, *McCann v. Biss*, 65 N.J. 301, 310 (1973) (holding that a real estate broker who fails to comply with the statute of frauds may not circumvent the statute by seeking recovery against the seller on quantum meruit theory) and *United Magazine Co. v. Murdoch Magazines Dist., Inc.*, 146 F. Supp. 2d 385, 415 (S.D.N.Y. 2001) ("No cause of action for unjust enrichment may be asserted that is repetitive of a contract claim dismissed because of the Statute of Frauds."). Assuming *arguendo* that Defendants' statement of the law is correct (and the Court makes no determination on that question at this time) Town Sports' argument fails because the Court has not found that Plaintiff's contract claim violates the statute of frauds.

Next the Court addresses the fraud claims. The Complaint contains three, and they are not the model of clarity. Plaintiff explains in his opposition briefs that his fraud counts are intended to be claims for fraud in the inducement. Count IV, captioned "Intentional

9

Misrepresentation," states that Town Sports and Radcliff made certain representations to TV in order to induce TV into a contract. Counts V and VI, captioned "Legal Fraud" and "Equitable Fraud," respectively, are essentially duplicates of each other. They each "repeat and reallege" all prior allegations and then do little more than recite the elements of a fraud claim. As best as the Court can construe, Counts V and VI are merely repetitive of the fraud in the inducement claim of Count IV and shall be dismissed as duplicative.

Plaintiff alleges in Count IV that both Town Sports and Radcliff (on behalf of Town Sports) falsely "represented and promised" to TV that Town Sports wanted "TV to work directly for … Town Sports on the completion of [GMS] and on other software development services projects." Compl. ¶ 79. Plaintiff claims that Town Sports "never truly intended for … TV to work directly for … Town Sports on the completion of [GMS] and on other software development services projects" but rather, made such a representation for the purpose of causing TV to deliver certain work product to Town Sports. TV claims it "relied upon these false representations and promises to its detriment." Compl. ¶ 87. Plaintiff explains in its brief that this detrimental reliance is pled in subsections (a) through (d) of paragraph 51 of the Complaint. Here TV states that it incurred approximately $622,000 in expenses establishing vendor contracts, sponsoring visa applications, paid employees and maintained facilities pursuant to its agreement with Town Sports. Compl. ¶ 51. Ultimately, TV contends that Town Sports breached the agreement.

Town Sports contends that the fraud claim should be dismissed because (1) it is not extrinsic to the alleged oral contract; (2) TV does not plead reasonable reliance on a false statement; (3) the claim is not pled with the requisite particularity. Radcliff's arguments are similar. Both defendants brief the issues under both New York and New Jersey law, and

Plaintiff asserts New Jersey law applies. However, Defendants neither contend there is nor do they identify a conflict between the states' laws. *See, e.g.*, Radcliff Brf. at 12 ("[T]he relevant law in New York and New Jersey applicable to TV's [fraud] causes of action is either virtually identical or substantially similar.") As such, the Court applies the law of the forum.

As a threshold matter, the Court finds that Plaintiff has pled Count IV with the requisite specificity. Under Rule 9(b), where a complaint alleges "fraud or mistake," a plaintiff must describe "with particularity" the circumstances that constitute the fraud or mistake. Fed. R. Civ. P. 9(b). Generally speaking, "Rule 9(b) serves to give defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). The rule requires a plaintiff to plead with particularity the facts supporting the elements of fraud. *Id.* Thus, in order to successfully plead fraud under Rule 9(b), a plaintiff must offer "some precision and some measure of substantiation." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990). A plaintiff may satisfy the rule's requirement "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quotations omitted). A Plaintiff also must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

Here, the Complaint alleges the nature of the representations (that Town Sports wanted to TV to provide certain software development services), the time the allegedly

11

fraudulent representations were made (in or before September 2009), who made the representations (Mike Radcliff of Radcliff and Daniel Gallagher, Peggy Hoeurn and Siva Mathusoodana of Town Sports), and how they were made (verbally during face-to-face meetings and telephone calls, in writing via email).  While Plaintiff may not specify exactly to whom at TV the representations were made, it is clear they were made to someone at TV, and the Court finds that that Plaintiff has sufficiently offered "some precision and some measure of substantiation" in their allegations had have met the requirements of Rule 9(b).

       To establish a claim for fraudulent inducement, a plaintiff is required to show a defendant made a "material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by [the plaintiff] to [its] detriment." *Travelodge Hotels, Inc. v. Honeysuckle Enterprises Inc.*, 244 Fed. Appx. 522 (3d Cir. 2007) (citing *Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981).  It has been noted that, "[a]s a general rule, fraudulent inducement cannot be predicated upon representations which involve things to be done in the future."  *Luscko v. Southern Container Corp.*, No. 10-1249, 2010 WL 4846057 at *3 (3d Cir. November 30, 2010) (citing *Anderson v. Modica*, 4 N.J. 383, 73 A.2d 49, 53 (N.J. 1950)).  However, "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud."  *Id.* (citing *Lo Bosco v. Kure Eng'g*, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (citing *Phoenix Techs., Inc. v. TRW, Inc.*, 834 F. Supp. 148, 152 (E.D.Pa.1993), and *Notch View Assocs. v. Smith*, 260 N.J. Super. 190, 615 A.2d 676, 682 (N.J. Law Div.1992))).

Construing Plaintiff's Complaint in its most favorable light, it appears that Count IV sounds in promissory fraud. This cause of action was discussed in a recent case in this district:

> "[P]romissory fraud is a false representation of intent concerning future conduct, such as a promise to perform a contract when there is no actual intent to do so." [*Protocol Elecs., Inc. v. Transolutions, Inc.*, Civil Action No. 03-4162, 2005 WL 1106132, at *6 (D.N.J. April 29, 2005) (applying Illinois law], …; [See also] Ian Ayres & Gregory Klass, Promissory Fraud, 78 N.Y.S. Bar J. 26, 27 (May 2006) ("Breach of contract is not fraud. But when the breaching party never intended to perform in the first place, the promise is fraudulent, plain and simple. Promisees have a right to think that they are bargaining for performance, not an action for breach of contract."). Promissory fraud is an obscure cause of action. *Shogen v. Global Aggressive Growth Fund, Ltd.*, Civil Action No. 04-5695, 2007 WL 1237829, at *13 n. 12 (D.N.J. April 26, 2007). This Court's research has not found any express discussion of this cause of action by any New Jersey state court. The *Shogen* court applied promissory fraud as a matter of New Jersey law, but dismissed the count on the merits at summary judgment. It appears that the majority rule among the states is to allow a cause of action for promissory fraud. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109, at 764 (5th ed.1984) (stating that the "prevailing" view is to permit actions of promissory fraud); R. Alston Hamilton, Tennessee's Long-Awaited Adoption of Promissory Fraud, 59 Tenn. L.Rev. 325, 337 (1992) (same). Dicta in New Jersey state court appellate opinions suggest that the New Jersey Supreme Court would adopt this position. *See, e.g., Van Dam Egg Co. v. Allendale Farms, Inc.*, 199 N.J. Super. 452, 489 A.2d 1209, 1211 (N.J.Super. App.Div.1985) ("A promise to pay in the future is fraudulent if there is no present intent ever to do so.").

*Moe v. Seton Hall University*, No. 09-1424, 2010 WL 1609680, at *7 (D.N.J. April 20, 2010).

In light of the lack of briefing from the parties on the issue and it appearing that the claim may be viable under New Jersey law, the Court will not dismiss Count IV at this juncture.

Defendant Town Sports last challenges that portion of each of Plaintiff's claims wherein Plaintiff seeks "reasonable attorney's fees." Such a relief, along with compensatory damages and other unspecified relief, is sought in each count. While the Court is cognizant of

the general rule that each party bear their own counsel fees absent, for example, statutory or contractual fee shifting, the Court finds it premature at this stage of the proceeding to address the question of counsel fees.

A.  Radcliff's Motion to Dismiss for Lack of Personal Jurisdiction

According to the Complaint, Radcliff Group is a limited liability company organized under the law of North Carolina and has its principal place of business in that state.  The company provides "consultation services to boards and senior-executives of corporations." Complaint ¶ 21.  At the relevant times, Radcliff acted as an agent for Town Sports, which is located in New York.  *Id.*

Under Federal Rule of Civil Procedure 12(b)(2), a party may move for dismissal of a case based on lack of personal jurisdiction.  *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 300 (3d Cir. 2001).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court will construe as true the allegations within the complaint, and shall construe disputed facts in favor of the Plaintiff.  *Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

Once personal jurisdiction is challenged the plaintiff has the burden of establishing that the case is properly before the court.  *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001).  In particular, "the plaintiff bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990).  A plaintiff may satisfy this burden through the use of affidavits or other competent evidence.  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Generally, "[a] nexus between the defendant, the forum and the litigation is the essential foundation" of personal jurisdiction. *Asahi Metal Indus. Co. v.Super. Ct.*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The Third Circuit has set forth an analytical framework to determine whether personal jurisdiction over a non-resident defendant is proper. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). This analysis begins with an examination of Federal Rule of Civil Procedure 4(e). *Id.* A court must then consider whether the defendant's contacts with the forum state are sufficient to support general personal jurisdiction. *Id.* Absent general jurisdiction, a court should determine whether specific personal jurisdiction exists. *Id.*

Federal Rule of Civil Procedure 4(e) allows a court to exercise "personal jurisdiction over non-resident defendants to the fullest extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co.*, 149 F.3d at 200 (citation omitted). New Jersey's long-arm statute allows the exercise of personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000).

Due Process requires that a defendant have minimum contacts with the forum state and that an exercise of jurisdiction over the defendant comport with " 'traditional notions of fair play and substantial justice.' " *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Further, "minimum contacts must have a basis in 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi Metal Indus. Co.*, 480 U.S. at 109 (quoting

15

*Burger King*, 471 U.S. at 475). "Essentially, before hearing a case, a court must ask whether 'the quality and nature of the defendant's activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state.' " *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (modifications and emphasis in original) (quoting *Kulko v.Super. Ct. of Cal.*, 436 U.S. 84, 92, 98 S. Ct. 1690, 56 L. Ed.2d 132 (1978)). Whether sufficient minimum contacts exist to assert personal jurisdiction depends upon "the nature of the interactions and type of jurisdiction asserted." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir.2006). Where the cause of action "does not arise out of or relate to the [defendant]'s activities in the forum State," but the defendant has "continuous and systematic" contacts with the forum state sufficient to confer personal jurisdiction, a court is said to exercise general jurisdiction over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed.2d 404 n. 9 (1984). On the other hand, a court exercises specific jurisdiction when the defendant has limited contacts with the forum state but the suit against him arises out of or relates to those contacts. *Id.* at 414 n. 8.

Here, Plaintiff argues that the Court should permit jurisdictional discovery before addressing the question of whether personal jurisdiction exists for Radcliff. Plaintiff lists several areas that it should be permitted to "explore," such as the extent to which Radcliff acted outside of its agency relationship with Town Sports, the extent to which Radcliff has previously conducted business in New Jersey, whether Radcliff previously advertised or otherwise solicited business in New Jersey, whether Mr. Radcliff visited New Jersey on other occasions in connection with the events complained of in the litigation, the geographic scope of Radcliff's business, and Radcliff's internet contacts with New Jersey. Pl Br. at 23-24. However, to obtain jurisdictional discovery, TV must present "factual allegations that suggest

16

'with reasonable particularity' the possible existence of the requisite 'contacts between [Radcliff] and the forum state.'" *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (quoting *Toys " R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003)). This Plaintiff has not done. Consequently, TV's request for jurisdictional discovery is denied. *See id.* ("A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.") The Court decides the jurisdictional question on the evidence before it.

General Jurisdiction

When a party is subject to the general jurisdiction of a state, that party may be called to answer any claim against it, regardless of whether the subject matter of the cause of action has any connection to the forum. *Pennzoil Prods. Co.*, 149 F.3d at 200. Thus, a plaintiff must demonstrate significantly more than "minimum contacts" to establish general jurisdiction over a defendant. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987). In order to establish general personal jurisdiction, a plaintiff must show that the nonresident defendant's contacts with the state are both "continuous and systematic." *Helicopteros*, 466 U.S. at 414-416 (1984).

The Court finds that Radcliff does not have sufficient contacts to give rise to general jurisdiction. Radcliff has no offices in New Jersey, does not direct advertising to New Jersey and does not solicit business in New Jersey. Radcliff Decl. ¶¶ 3-5. In the complaint, there is reference to one email sent from Michael Radcliff of Radcliff to Ed Seoesman of TV, who was presumably in New Jersey. Also, according to the affidavit of Michael Radcliff, CEO of Radcliff, while acting as an intermediary between Town Sports and TV, he sent to TV and/or received from TV approximately 10 emails in September of 2009. Radcliff Aff. ¶ 12. During

that time he also participated in "several" phone calls with these parties. *Id.* ¶ 13. Additionally, Plaintiff has submitted an affidavit stating that on one day in November 2008, Michael Radcliff attended a meeting in New Jersey along with representatives of Town Sports, TV and Ajilon. Soesman Aff. ¶ 6. These are the only contacts with New Jersey that the Court can discern from the pleadings and Plaintiff's submissions. Plaintiff has simply not shown that Radcliff has any continuous and systematic contact with New Jersey. Therefore, the Court determines that it does not have general jurisdiction over Radcliff.

Specific Jurisdiction

"Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir.2007). The analysis with respect to specific jurisdiction exists involves a three-part inquiry:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice."

*Marten*, 499 F.3d at 296 (citations and internal quotations omitted, alteration in original). The analysis of questions of specific jurisdiction focuses on the relationship between the claims and contacts. *Id.* The evaluation is generally done on a claim-by-claim basis, although "it may not be necessary to do so for certain factually overlapping claims." O'Conner, 496 F.3d at 318 n. 3.

Here, the Plaintiff's claim against Radcliff is for fraud. Plaintiff alleges that Town Sports and Radcliff, as an agent for Town Sports, "promised that Defendant Town Sports wanted Plaintiff TV to work directly for Defendants Town Sports on the completion of GIMS and on other software development services projects." Compl. ¶ 79.

18

Plaintiff does not argue that Radcliff's contacts with New Jersey satisfy this traditional three-step analysis for specific jurisdiction. Rather, it argues that jurisdiction exists under *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed.2d 804 (1984) based on the effects of Radcliff's out-of-state conduct had in New Jersey. *Calder* allows a plaintiff to demonstrate personal jurisdiction if he or she shows:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). "If a plaintiff satisfies these three elements, known collectively as the 'effects test,' the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone ... are far too small to comport with the requirements of due process' under our traditional analysis." *Id.*

Importantly, the Third Circuit has "consistently emphasized that *Calder* should be applied narrowly." *Marks v. Alfa Group*, 369 Fed. Appx. 368, 370 (3d Cir. 2010) (citing *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 261-65 (3d Cir. 1998) (agreeing with "[t]he majority of our sister circuits that [a narrow construction is most appropriate for] the application of *Calder* to business torts") and *Marten*, 499 F.3d at 297 (stating that, because "the effects test and traditional specific jurisdiction analysis ... are cut from the same cloth, ... the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state")). Therefore, "at a minimum, [TV]

must allege facts that establish that [Radcliff] 'expressly aimed' [its] conduct at [New Jersey]".  *Id.*; *Marten*, 499 F.3d at 297; *IMO*, 155 F.3d at 265-66.  To demonstrate that a defendant expressly targeted a forum with its tortious activities, a plaintiff typically must show that the defendant made "some type of 'entry' into the forum state."  *IMO*, 155 F.3d at 265 (citing *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir.1994)).

Here, Plaintiff has not pled or presented facts that Radcliff expressly aimed its conduct at New Jersey and New Jersey was the focal point of its conduct.  Although TV argues that personal jurisdiction is evident on "the face of the complaint" by virtue of application of *Calder*, the Court does not find this to be so.  At most, the Complaint establishes that Plaintiff's principal place of business is located in New Jersey.  Even if the Court presumes that because Plaintiff is located in New Jersey it suffered the brunt of the harm here, TV has not established the third prong of the *Calder* analysis, namely, that Radcliff expressly aimed its conduct at New Jersey.  It is Plaintiff's burden to establish the existence of jurisdiction when challenged with a motion to dismiss for lack of jurisdiction, and TV has not met that burden here.  Consequently, Radcliff's motion to dismiss is granted.

### III.  CONCLUSION

For the reasons above, Town Sports motion to dismiss is granted as to Counts V and VI and denied in all other respects.  Radcliff's motion to dismiss is granted.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated:  February 28, 2011